**No. 20-55004**
**Pro Bono**

_____

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

_____

ROSCOE CHAMBERS,

*Plaintiff-Appellant,*

v.

C. HERRERA, ET AL.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Central District of California
No. 5:17-cv-02564-MWF-KES
Hon. Michael W. Fitzgerald

_____

**APPELLANT'S REPLACEMENT OPENING BRIEF**

_____

Carter White, State Bar No. 164159
Emily Dennis, Certified Law Student
Abigail Miles, Certified Law Student
UC Davis Civil Rights Clinic
One Shields Avenue, Bldg. TB-30
Davis, California 95616
Telephone: (530) 752-5440
ccwhite@ucdavis.edu

*Attorneys for Plaintiff-Appellant*
*Roscoe Chambers*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......................................................................v

JURISDICTIONAL STATEMENT ...........................................................1

STATUTORY AUTHORITIES ................................................................1

ISSUES PRESENTED............................................................................1

STATEMENT OF THE CASE.................................................................2

A. Preface to the Statement of Facts........................................................2

B. Statement of Facts...........................................................................7

C. Procedural History .......................................................................10

SUMMARY OF THE ARGUMENT .....................................................16

STANDARD OF REVIEW .................................................................18

ARGUMENT ....................................................................................19

I. THE DISTRICT COURT IMPROPERLY DISMISSED CHAMBERS'
RETALIATION CLAIM BECAUSE NO SPECIAL FACTORS COUNSEL
HESITATION IN EXTENDING *BIVENS* LIABILITY AND CHAMBERS
STATED A PLAUSIBLE CLAIM FOR RELIEF ........................................19

    A. The *Abbasi* test for determining whether a *Bivens* claim is
actionable.............................................................................20

    B. After *Abbasi*, this Court held that a *Bivens* remedy extends to
retaliation claims under the First Amendment. ..................................21

    C. Chambers' claim in analogous to the one in *Boule*. ......................22

        1. Chambers' claim challenges individual instances of
unconstitutional conduct and recognizing a *Bivens* remedy

would not cause the courts to impermissibly wade into prison administration...........................................................................22

    2. First Amendment claims are amenable to *Bivens* remedies because they are easily administrable and would not cause a flood of claims in the federal courts. ......................................23

    3. Chambers has no alternative remedies outside of *Bivens*…24

D. Chambers' retaliation claim should be reinstated because he pled adequate facts to state a claim against Lt. Herrera. ...........................28

II.  DISMISSAL OF CHAMBERS' EIGHTH AMENDMENT CLAIMS WAS ERRONEOUS BECAUSE THE SUPREME COURT HAS EXTENDED *BIVENS* LIABILITY TO DELIBERATE INDIFFERENCE CLAIMS AND CHAMBERS STATED CLAIMS FOR RELIEF. ......................................32

A. The Supreme Court has expressly recognized *Bivens* liability for claims of deliberate indifference to known risks of serious harm…..32

B. Chambers' Eighth Amendment failure to protect claims fall within this established *Bivens* context…..........................................................35

C. Even if Chambers' claim is a modest extension of *Bivens*, special factors do not counsel hesitation in recognizing a damages remedy..37

    1. Eighth Amendment deliberate indifference claims are amenable to *Bivens* remedies because there is extensive judicial guidance on how courts should evaluate these claims.. ...................................37

    2. Separation of powers concerns are abated because Congress passed the PLRA with full knowledge of *Carlson* and *Farmer* and made no attempt to foreclose *Bivens* liability in this context……38

    3. Chambers' claims challenge individual acts of the defendants, not far-reaching prison policies, and recognizing *Bivens* liability here would not entrench the courts in prison administration…….39

    4. Extending *Bivens* would not unmanageably increase administrative costs......................................................................41

5. Chambers has no alternative remedies outside of *Bivens*............42

A. Chambers stated a plausible claim for relief against Defendants
Mitchell, Lake, and Martin...............................................................43

1. He adequately pled that the risk of harm faced was sufficiently
serious...........................................................................................44

2. His pleadings demonstrate that Defendants were deliberately
indifferent......................................................................................45

III. THE DISTRICT COURT IMPROPERLY DISMISSED CLAIMS
AGAINST DEFENDANTS ESQUETINI, HERRERA, AND VELEZ
BECAUSE CHAMBERS ADEQUATELY PLED A PLAUSIBLE CLAIM
FOR RELIEF. ................................................................................48

A. Chambers' allegation that Esquetini failed to treat him in any way
for six weeks is sufficient to state a claim........................................48

1. Chambers' injury was an objectively serious medical need........49

2. Chambers sufficiently pled that Esquetini acted with deliberate
indifference....................................................................................50

B. The District Court improperly dismissed Chambers' Eighth
Amendment claims for excessive force against Herrera and Velez.. .52

1. The District Court improperly required Chambers to foreclose
alternative factual scenarios in his claim against Herrera..............52

2. Chambers' allegation that Velez sprayed him with mace through
the food slot of a solitary confinement cell gives rise to a plausible
inference that Velez acted with malicious and sadistic intent.. .....54

CONCLUSION.................................................................................57

STATEMENT OF RELATED CASES................................................59

CERTIFICATE OF COMPLIANCE...................................................60

CERTIFICATE OF SERVICE.. ..............................................................................61

ADDENDUM.. .......................................................................................................62

# TABLE OF AUTHORITIES

## CASES

*Agnostini v. Felton*, 521 U.S. 203 (1997) ............................................................... 33

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................... 19, 21

*Banks v. Gore*, Petition for Writ of Certiorari, No. 18-840, 2018 WL 6929711 (Dec. 21, 2018) ............................................................ 3

*Beal v. Beller*, 847 F.3d 897 (7th Cir. 2017) ............................................................ 3

*Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007) ............................................. 19

*Bistrian v. Levi*, 912 F.3d 79 (3d Cir. 2018) ..................................................... 34, 40

*Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) ......................... *passim*

*Bosse v. Oklahoma*, 137 S. Ct. 1 (2016) ................................................................. 33

*Boule v. Egbert*, 998 F.3d 370 (9th Cir. 2021) .......................... 16-17, 19, 21, 22, 23

*Brodheim v. Cry*, 584 F.3d 1262 (9th Cir. 2009) .................................................... 30

*Bruce v. Ylst*, 351 F.3d 1283 (9th Cir. 2003) ......................................................... 31

*Capp v. County of San Diego*, 940 F.3d 1046 (9th Cir. 2019) ............................... 18

*Carlson v. Green*, 446 U.S. 14 (1980) ............................................................. *passim*

*Chambers v. Fed. Bureau of Prison*, No. 3:18-CV-501 (M.D. Pa) ................. 14, 27

*Chavez v. Kings Cty.*, No. 113-cv-00342-SKO-PC, 2016 WL 8730713 (E.D. Cal. Mar 18, 2016) ............................................................ 53

*Clement v. Gomez*, 298 F.3d 898 (9th Cir. 2002) ................................................... 52

*Colwell v. Bannister*, 763 F.3d 1060 (9th Cir. 2014) ............................................. 49

*Cooper v. Schriro*, 189 F.3d 78 (8th Cir. 1999) ....................................................... 3

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001) ............................................... 34

*Crawford-El v. Britton*, 523 U.S. 574 (1998) ........................................................ 28

*Davis v. Passman*, 442 U.S. 228 (1979) ........................................................... 20, 24

*Draper v. Rosario*, 836 F.3d 1072 (9th Cir. 2016) ................................................24

*Dunn v. Castro*, 621 F.3d 1196 (9th Cir. 2010) .....................................................18

*Erickson v. Pardus*, 551 U.S. 89 (2007) ........................................................ 18, 56

*Estelle v. Gamble*, 429 U.S. 97 (1976) ...................................................................49

*Farmer v. Brennan*, 511 U.S. 825 (1994) ...................................................... *passim*

*Furnace v. Sullivan*, 705 F.3d 1021 (9th Cir. 2013) ........................................ 55, 56

*Gibson v. United States*, 781 F.2d 1334 (9th Cir. 1986) ........................................23

*Gillespie v. Civiletti*, 629 F.2d 637 (9th Cir. 1980) ...............................................37

*Hartman v. Moore*, 574 U.S. 250 (2006) ................................................................21

*Hartsfield v. Colburn*, 371 F.3d 454 (8th Cir. 2004) ................................................3

*Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010) .................................................. 18, 19

*Hoard v. Hartman*, 904 F.3d 780 (9th Cir. 2018) ..................................................53

*Hudson v. McMillian*, 503 U.S. 1 (1992) .............................................. 37, 52, 53, 55

*Hudson v. Palmer*, 468 U.S. 517 (1984) .................................................................44

*Hunt v. Dental Dept.*, 865 F.2d 198 (9th Cir. 1989) ........................................ 50, 52

*Jett v. Penner*, 439 F.3d 1091 (9th Cir. 2006) .......................................................49

*Johnson v. Fed. Bureau of Prisons*, No. 3:15-CV-0581-AC, 2016 WL 8345464 (D. Or. July 27, 2016) ............................................................................................4

*Johnson v. Heins*, 844 Fed.Appx. 974 (9th Cir. 2021) ..................................... 52, 53

*Jones v. Lehigh Southwest Cement Co.*, No. 1:12-cv-0633 AWI JLT, 2013 WL 3006418 (E.D. Cal. June 14, 2013) ................................................................4

*Kaddoura v. Cate*, No. 1:11-cv-01422-LJO-LJO-BAM PC, 2012 WL 5308012 (E.D. Cal. Oct. 29, 2012) .................................................................................51

*Keenan v. Hall*, 83 F.3d 1083 (9th Cir. 1996) .......................................................44

*Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) .............................................2

*Lanuza v. Love*, 899 F.3d 1019 (9th Cir. 2018) ........................................ 22, 23, 24

vi

*Littlejohn v. SF City*, No. C 09-05021 SI, 2010 WL 5158330 (N.D. Cal. Dec. 14, 2010) ...................................................................................................4

*Madrid v. Gomez*, 889 F. Supp. 1146 (N.D. Cal. 1995) ..........................................36

*Martin v. Hurtado*, No. 07cv0598 BTM RBB, 2008 WL 4145683 (S.D. Cal. Sept. 3, 2008) ...................................................................................................31

*McBride v. Lopez*, 807 F.3d 982 (9th Cir. 2015) ...................................................24

*McCottrell v. White*, 933 F.3d 651 (7th Cir. 2019)...............................................53

*McLean v. Gutierrez*, No. EDCV 15-275 RGK (SP), 2017 WL 6887309 (C.D. Cal. Sept. 28, 2017) ........................................................................................52

*Midlantic Nat. Bank. v. New Jersey Dep't of Env'l Prot.*, 474 U.S. 494 (1986).....38

*Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990) ..................................................38

*Minneci v. Pollard*, 565 U.S. 118 (2012).............................................................34

*Minor v. FedEx Office & Print Services, Inc.*, 182 F.Supp.3d 966 (N.D. Cal. 2016) ........................................................................................................3, 6

*Moneyham v. United States*, No. EDCV 17-329-VBF (KK), 2018 WL 3814586 (C.D. Cal. May 31, 2018) ..............................................................................52

*Moore v. Thomas*, 653 F.Supp.2d 984 (N.D. Cal. 2009).......................................49

*Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016 (en banc)...................................27

*Nordstrom v. Ryan*, 762 F.3d 903 (9th Cir. 2014) .......................................... 19, 54

*Oltarzewski v. Ruggierio*, 830 F.2d 136 (9th Cir. 1987) ........................................44

*Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) ......................................... 49, 50

*Porter v. Nussle*, 534 U.S. 516 (2002)..................................................................26

*Pratt v. Rowland*, 65 F.3d 802 (9th Cir. 1995) .....................................................29

*Quinn v. Dowbak*, No. 2:17-cv-0992-MCE-EFB-P, 2019 WL 1923222 (E.D. Cal. Apr. 30, 2019)...............................................................................................51

*Reid v. United States*, 825 Fed.Appx. 442 (9th Cir. Sept. 2, 2020)........... 33, 39, 42

*Rhodes v. Robinson*, 408 F.3d 559 (9th Cir. 2005)................................................30

*Rizzo v. Dawson*, 778 F.2d 527 (9th Cir. 1985) ......................................................31

*Sanchez v. Pereira-Castillo*, 590 F.3d 31 (1st Cir. 2009) ........................................36

*Santos v. Gates*, 287 F.3d 846 (9th Cir. 2002) .......................................................53

*Schwenk v. Hartford*, 204 F.3d 1187 (9th Cir. 2000) ..............................................55

*Serna v. Colorado Dept. of Corr.*, 455 F.3d 1146 (10th Cir. 2006) ........................53

*Skinner v. Switzer*, 562 U.S. 521 (2011) .................................................................24

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) .........................................................36

*Steinle v. City & Cty. of San Francisco*, 230 F.Supp.3d 994 (N.D. Cal. 2017) ......54

*Strohmeyer v. Belanger*, No. 3:14-CV-00661-RCJ-WGC, 2018 WL 381141 (D. Nev. Mar. 27, 2018)................................................................................................31

*United States v. Chambers*, 554 Fed.Appx. 539 (8th Cir. 2014).............................7

*United States v. Chambers*, No. 3:12-cr-00071-SMR (S.D. Iowa, ECF 297, Sept. 10, 2021) .................................................................................................................7

*Valdes v. Crosby*, 450 F.3d 1231 (11th Cir. 2006) .................................................36

*Vann v. City of New York*, 72 F.3d 1040 (2d Cir. 1995)..........................................36

*Watison v. Carter*, 668 F.3d 1108 (9th Cir. 2012)................................ 28, 29, 30, 31

*Watson Carpet & Floor Covering, Inc. & Mohawk Industries, Inc.*, 648 F.3d 452 (6th Cir. 2011) ......................................................................................................54

*Whitley v. Albers*, 475 U.S. 312 (1986) ..................................................................55

*Williams v. Baker*, 487 F.Supp.3d 918 (E.D. Cal. Sept. 14, 2020)............. 25, 26, 52

*Williams v. Cty. of Alameda*, 26 F.Supp.3d 925 (N.D. Cal. 2014) ...........................3

*Wood v. Beauclair*, 692 F.3d 1041 (9th Cir. 2012). ...............................................47

*Wood v. Moss*, 572 U.S. 744 (2014) ................................................................ 21, 33

*Zichko v. Idaho*, 247 F.3d 1015 (9th Cir. 2001) .....................................................18

*Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) ....................................................... *passim*

**STATUTES**

18 U.S.C § 4001(b)(1)........................................................................25

28 U.S.C. § 1291...............................................................................1

28 U.S.C. § 1915A....................................................................... 24, 62

42 U.S.C. § 1983............................................................... *passim*

42 U.S.C. § 1997e(a).................................................................... 24, 63

42 U.S.C. § 1997e(e).................................................................... 26, 63

## RULES

Fed. R. Civ. P. 8...................................................................... 13, 16

## REGULATIONS

*Administrative Remedy Program: Excluded Matters*, 67 Fed. Reg. 50804 (2002).26

## OTHER AUTHORITIES

Ira P. Robbins, *Ghostwriting: Filling the Gaps of Pro Se Prisoners' Access to the Courts*, 23 Geo. J. Legal Ethics 271 (2010) ....................................................4

Richard H. Frankel & Alistair E. Newbern, *Prisoners and Pleading*, 94 Wash. U. L. Rev. 899 (2017)............................................................4

Rory K. Schneider, Comment, *Illiberal Construction of Pro Se Pleadings*, 159 U. Pa. L. Rev. 585 (2011)....................................................4

## JURISDICTIONAL STATEMENT

The plaintiff appeals causes of action implied by the U.S. Constitution, as approved in *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). The district court properly exercised jurisdiction under 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291. The district court entered a final judgment on December 9, 2019. (ER004.) Chambers timely appealed on December 30, 2019. (ER224.)

## STATUTORY AUTHORITIES

All relevant statutory authorities appear in the Addendum to this brief.

## ISSUES PRESENTED

I.   Did the district court err in dismissing Chambers' *Bivens* claim for First Amendment retaliation against Herrera under *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017)?

II.  Did the district court err in dismissing Chambers' Eighth Amendment failure to protect claims against Lake, Mitchell, and Martin under *Abbasi* despite the Supreme Court's recognition of similar claims in *Farmer v. Brennan*, 511 U.S. 835 (1994) and *Carlson v. Green*, 446 U.S. 14 (1980)?

III. Did the district court err in dismissing Chambers' excessive force claims against Herrera and Velez, as well as his deliberate indifference claim against Esquetini for failure to state a claim?

# STATEMENT OF THE CASE

## A. Preface to the Statement of Facts

Chambers stated factual allegations in his original complaint (ER214), two amended complaints (ER190; ER164), and two oppositions to Defendants' motions to dismiss (ER090; ER052). As the magistrate noted, these allegations were more specific and detailed in earlier filings compared to the second, and final, amended complaint. (ER160.) As an incarcerated civil rights litigant who proceeded *pro se* in the district court, Chambers asks this Court to read the complaints together, along with the sworn factual allegations included in his opposition briefing, to provide the most complete set of facts in determining the sufficiency of his pleadings. This follows the district court's approach:

> In reviewing Plaintiff's factual allegations, the Court cites the SAC, Plaintiff's prior complaints, opposition briefing, and documents filed in other lawsuits, because all of these documents contain facts Plaintiff could allege if given leave to amend.

(ER021.)

This Court should review all factual allegations not just to determine whether leave to amend is appropriate but to determine whether the pleadings were sufficient. Case law and public policy support this approach.

Although this Court historically treated original complaints as "non-existent" after the plaintiff amends, it has taken steps towards mitigating this "harsh" rule. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 925 (9th Cir. 2012) (internal

quotations and citations omitted); see *id.* at 925-26 (recounting cases). One mitigating doctrine holds that an amended pleading does not supersede the original pleading where "the amended complaint incorporates by reference portions of the prior pleading." *Williams v. Cty. of Alameda*, 26 F.Supp.3d 925, 936 (N.D. Cal. 2014). The court may apply this approach as part of its obligation to construe *pro se* pleadings liberally, which also relaxes the requirement for explicit incorporation by reference. *See Minor v. FedEx Office & Print Services, Inc.*, 182 F.Supp.3d 966, 973 (N.D. Cal. 2016) (finding it "apparent . . . Plaintiff intended the FAC as a supplement to the original complaint").

Two Circuits and numerous district courts have expressly adopted this approach as part of their obligation to *pro se* plaintiffs, even where the plaintiff did not explicitly reference other pleadings. *See Beal v. Beller*, 847 F.3d 897, 901-02 (7th Cir. 2017) (reading multiple verified complaints together); *Hartsfield v. Colburn*, 371 F.3d 454, 455-57 (8th Cir. 2004) (same for incarcerated *pro se* civil rights plaintiff); *Cooper v. Schriro*, 189 F.3d 781, 783 (8th Cir. 1999) ("clear" plaintiff intended for original and amended complaints be read together); *see generally* Petition for Writ of Certiorari, at *27-29, *Banks v. Gore*, No. 18-840, 2018 WL 6929711 (Dec. 21, 2018) (describing like-minded district court holdings).

This approach is common among the district courts of this Circuit. *See, e.g.*, *Johnson v. Fed. Bureau of Prisons*, No. 3:15-CV-0581-AC, 2016 WL 8345464, at *1 (D. Or. July 27, 2016) (allegations from original complaint "added context"); *Jones v. Lehigh Southwest Cement Co.*, No. 1:12-cv-0633-AWI-JLT, 2013 WL 3006418, at *2 (E.D. Cal. June 14, 2013) (reading complaints alongside the factual allegations in the plaintiff's opposition to a motion to dismiss); *Littlejohn v. SF City*, No. C 09-05021 SI, 2010 WL 5158330, at *1 n. 3 (N.D. Cal. Dec. 14, 2010) (reviewing assertions from pro se plaintiff's original and amended complaints).

Reading complaints together also mitigates the challenges of *pro se* representation. *See generally* Rory K. Schneider, Comment, *Illiberal Construction of Pro Se Pleadings*, 159 U. Pa. L. Rev. 585, 599, 602 (2011); Ira P. Robbins, *Ghostwriting: Filling the Gaps of Pro Se Prisoners' Access to the Courts*, 23 Geo. J. Legal Ethics 271, 273 (2010).

Moreover, pre-printed complaint forms impact the level of detail *pro se* litigants either can provide or believe they are allowed to provide. Forms that instruct the plaintiff to state their claim "as briefly as possible," as the SAC form did here, "run the risk of harming plaintiffs by encouraging them to leave out facts that might be necessary" to defeat a motion to dismiss. Richard H. Frankel & Alistair E. Newbern, *Prisoners and Pleading*, 94 Wash. U. L. Rev. 899, 929-30 (2017). The limited number of pre-printed lines following questions asking

plaintiffs to describe their claims and overtly legalistic language utilized in those questions can inhibit the detail and clarity of *pro se* litigants' claims. *Id.* at 935, 939-40.

Here, Chambers was given a different form for his first two complaints than for his SAC, and the earlier forms provided only a few lines in which the plaintiff was to "explain how [each] defendant was acting under color of law," a direction that Chambers clearly thought required him to describe the facts of the constitutional violation. Another instruction asked him to list which civil rights had been violated. It is easy to see how legalistic language, limited space, and changing forms can acclimate the *pro se* plaintiff to pleading fewer facts, blur the line between factual and legal pleadings, and occlude the benefit of pleading clearly and thoroughly.

Furthermore, there are numerous indications throughout Chambers' pleadings that he either believed each complaint was a supplement to the prior complaint or misunderstood the amendment function. For example, he did not replead in the FAC any of the original claims that survived dismissal. (ER188.) In his response to the court's request for clarification of the FAC, he recounted the procedural history thus far from his perspective and wrote that he filed the FAC to "proceed against several Defendant[s] in collaboration with the first Complaint." (ER177.) Further, he intended to "file the [FAC] with the original Complaint

minus the Defendant[s] [he] dismiss[ed] voluntarily." (ER178.) Moreover, Chambers referred to the "first complaint and second amended complaint" when no SAC had yet been filed. (ER183, ¶ 5-7.) When he eventually did file the SAC, it was "considerably less" detailed than his original pleading. (ER160.) The *Minor* court was motivated by a very similar record when it construed an amended complaint as incorporating previous complaints by reference, given that the plaintiff's intent to incorporate was sufficiently "apparent." 182 F.Supp.3d at 973.

It is also clear from the record that Chambers misunderstood the purpose of complaints, amended or otherwise, seeing them more as a procedural hurdle than a crucial step in litigation. (ER183 ("[T]he magistrate judge persuaded plaintiff to file a dismissal of defendants in the first complaint so he could summon the defendants.").) Indeed, he moved to disqualify the magistrate after she requested he clarify his claims in the FAC, stating she "persuaded [him] to file a dismissal of Defendants in the first Complaint . . . [but] now when [he] follow[ed] the court's instruction to [a]mend the Complaint, he [was] being hinder[ed] . . . by the court." (*Id.*) The misunderstanding continued through his opposition to the order appealed here. (ER013, ¶ 15 ("There is no need to re-file an amended complaint . . . [the defendants] had appropriate notice of the allegations against them, they failed to respond in a timely manner.").)

Chambers also included additional facts in both of his oppositions to defendants' motions to dismiss that would have strengthened his claims against Defendants Herrera, Velez, and Esquetini had they been included in his complaints. (ER102 (asserting Esquetini "did not give Chambers a brace or medication" before he eventually provided x-rays, which goes to the heart of a deliberate indifference claim); ER057-058 (asserting that "[Herrera and Velez were] not conducting any F.B.O.P. duties when they harmed Chambers," then asserting that he was not resisting orders when they assaulted him, which more fully establishes the circumstances of their use of force).)

Chambers therefore includes factual allegations from his three complaints and opposition briefing in his Statement of Facts and Brief so that the Court may consider them in determining the sufficiency of his pleadings.

## B. Statement of Facts

At all relevant times, Roscoe Chambers was incarcerated at USP Victorville. (ER214; *United States v. Chambers*, 554 Fed.Appx. 539 (8th Cir. 2014) (affirming criminal judgment).[1] Between May and November of 2017, Defendants subjected Chambers to a cohesive course of conduct including harassment, retaliation, and

---

[1] The court recently granted Chambers' motion for compassionate release and ordered his release to a residential reentry program. *See, United States v. Chambers*, No. 3:12-cr-00071-SMR (S.D. Iowa, ECF 297, Sept. 10, 2021).

physical harm, resulting in Chambers' placement in the Special Management Unit ("SMU").

On May 1, 2017, while Chambers was being held in the Special Housing Unit ("SHU"), Correctional Officer Enrique Velez assaulted Chambers by spraying mace into his face and mouth through the food slot in his cell, then fabricated a false report on the incident. (ER218, ¶ 2; ER172, ¶ 2; ER101.)

On August 23, 2017, Chambers attempted to file a complaint against Lieutenant Carmen Herrera by giving a BP-10 grievance to Steven Lake.[2] (ER172, ¶ 5; ER094, ¶ F.) The complaint described harassment by Defendant Herrera, as well as repeated assaults, harassment, and threats by other Bureau of Prisons ("BOP") staff. (ER172, ¶ 4; ER094, ¶ 4.) After Lake failed to act on the BP-10 form, Chambers renewed his efforts on September 20, 2017, by describing ongoing harassment to Defendant Mary Mitchell, the BOP Western Regional Director, and giving her a written BP-10 during a site visit to USP Victorville. (ER172, ¶ 4; ER098, ¶ N; ER218, ¶ 5 (describing how staff denied access to trial documents, law library, and recreation; discarded personal property; refused to process remedies; fabricated incident reports; tampered with mail and repeatedly assaulted,

---

[2] Chambers moved to substitute Lake for Melinda Clark. The magistrate construed this as a motion to dismiss Clark and amend the Second Amended Complaint to name Lake instead and granted the motion. (ER021, n. 2 and related text.) Thus, all of Chambers' claims against "Clark" will be construed against Lake here.

threatened, and harassed Chambers).) Mitchell did not respond to the complaints or otherwise intervene. (ER172, ¶ 4.)

Chambers was ultimately able to successfully file a grievance against Herrera on September 22, 2017, but the complaint was rejected on September 28. (ER171.) Herrera continued to harass Chambers into the fall of 2017 after she learned that Chambers was filing grievances against her, repeatedly threatening him, and denying him access to the law library and recreation. (ER172, ¶ 1; ER 173, ¶ 9; ER218, ¶ 1.) On October 13, 2017, Herrera assaulted Chambers, leaving him with a severely fractured right arm and wrist. (ER216; ER194, ¶ 1; ER 173, ¶ 9.)

Physician's Assistant Jose Esquetini saw Chambers after the incident but, in an attempt to cover up the assault, refused to examine the fracture until six weeks later, when he finally performed an x-ray. (ER219; ER172, ¶ 3; ER101, ¶ 5.) Esquetini did not provide Chambers with any brace, medication, or other treatment before the x-ray. (ER102, ¶ 2.)

Special Investigator Matthew Martin refused to investigate or preserve evidence from either the October 13th assault by Herrera or the May 1st assault by Velez and refused to process Chambers' grievances arising from the assaults. (ER193-195; ER173, ¶ 8.)

The entire course of conduct culminated in a hearing on November 22, 2017, to determine whether Chambers should be reassigned to the Special Management Unit ("SMU"). (ER173, ¶ 6.) Herrera was a moving force behind the hearing, as part of her course of retaliation against Chambers. (ER173, ¶ 9.) Chambers told the hearing officer prior that he was not comfortable with Herrera being present at the hearing, but the officer told Chambers that he "didn't care." (ER173, ¶ 6.) When Chambers expressed reservations about presenting any evidence or other information pertaining to Herrera, he was denied the right to present evidence at all.[3] (ER194.) Chambers was sent to the SMU program. (ER173.)

## C. Procedural History

### 1. Chambers' Original Complaint

On December 29, 2017, Chambers filed a civil rights action pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971). (ER214.) The Complaint named eight prison officials, including (1) Lieutenant C. Herrera, (2) Correctional Officer E. Velez, (3) Physician's Assistant Jose Esquetini, and (4) Western Regional Director for the BOP Mary M. Mitchell. (ER216-217, 219-220.)

The court screened the Complaint, finding that Chambers stated claims against (1) Herrera for use of excessive force under the Eighth Amendment based

_____

[3] Chambers included these allegations to support a Fifth Amendment procedural due process claim. Chambers abandons this claim and includes the allegations here only to support his allegation that the hearing was part of an ongoing course of retaliatory conduct.

on an assault resulting in two fractures to Chambers' arm and wrist and retaliation under the First Amendment, based on her adverse actions against Chambers after he filed a grievance against her, including the aforementioned assault; (2) Velez for use of excessive force under the Eighth Amendment, arising from his assault on Chambers with a can of mace; and (3) Esquetini for deliberate indifference to a serious medical need under the Eighth Amendment based on his failure to properly treat Chambers' injuries after Herrera's assault. (ER212.) The court dismissed Chambers' claim against Mitchell with leave to amend because he named her in her official capacity, as well as other claims against Defendants who are no longer party to this suit. (*Id.*)

After the screening order, Chambers elected to voluntarily dismiss any claims not sufficiently pled, and the district court directed service of process upon Defendants Herrera, Velez, and Esquetini. (ER200.)

2. First Amended Complaint and Order Directing Plaintiff to Clarify Claims and Defendants at Issue

On March 15, 2018, Chambers filed a First Amended Complaint, naming five Defendants including (1) Mitchell, (2) Deputy Regional Director for BOP Lake, and (3) Special Investigator Official Martin, for violations of the First and Eighth Amendments. (ER192-193)

The magistrate noted that the FAC did not contain claims against Herrera, Velez, and Esquetini that survived prior screening, though the allegations in the

FAC were factually related to those claims. (ER188.) Mitchell was the only defendant named in the FAC who was voluntarily dismissed from the initial Complaint. (*Id.*)

The court therefore directed Chambers to either voluntarily dismiss the claims and Defendants listed in the initial Complaint or file a Second Amended Complaint listing all of his claims and related Defendants. (ER189.)

In response, Chambers filed a Motion to Clarify Claims and Defendants, maintaining that he intended to "file the First Amended Complaint with the original Complaint minus the Defendant[s] [he] dismiss[ed] voluntarily . . . except the Defendant Mary M. Mitchell, Regional Director . . ." (ER178.)

3.  Second Amended Complaint

Shortly after filing the Motion to Clarify Claims and Defendants, Chambers filed a Second Amended Complaint. (ER164.) The SAC asserted claims against (1) Herrera, (2) Velez, (3) Esquetini, (4) Mitchell, (5) Lake, and (6) Martin, among others no longer party to this suit. (ER164-167.)

The magistrate screened the SAC and concluded that Chambers adequately stated a claim against (1) Herrera for use of excessive force under the Eighth Amendment and retaliation under the First Amendment, (2) Velez for excessive force, (3) Esquetini for deliberate indifference to a serious medical need under the Eighth Amendment, and (4) Mitchell, Lake, and Martin for deliberate indifference

to inmate safety under the Eighth Amendment, arising out of their failure to protect Chambers against Herrera. (ER162.)

After Chambers voluntarily dismissed the claims and Defendants that did not survive screening, the district court directed service of process upon the remaining Defendants. (ER155; ER153; ER154.)

### 4. Motions to Dismiss

On December 17, 2018, Defendants Esquetini, Mitchell, Lake, and Martin filed their Motion to Dismiss. (ER116.) On March 20, 2019, Defendants Herrera and Velez filed their Motion to Dismiss. (ER062.)

In both motions, Defendants contended the SAC should be dismissed under Federal Rule of Civil Procedure (FRCP) 12(b)(6) on two relevant grounds. First, Defendants argued that Chambers failed to state cognizable *Bivens* claims under the First Amendment for retaliation or under the Eighth Amendment for failure to protect against a supervisor. Second, Defendants averred that the SAC did not satisfy the requisite pleading standard under Rule 8. (ER126, 136-138; ER062, 074-075.) Finally, Defendants argued the SAC raised multiple, unrelated causes of action against the Defendants and should be dismissed for misjoinder. (ER138-139; ER078.)

Chambers filed oppositions to both Motions to Dismiss. (ER090; ER052.) Defendants filed reply briefs. (ER045; ER039.)

## 5. Report and Recommendation and District Court Order

On July 9, 2019, the Magistrate Judge issued a Report and Recommendation ("R&R") recommending that Defendants' Motions to Dismiss be granted, that Chambers' Eighth Amendment claims against Herrera, Velez, and Esquetini be dismissed with leave to amend, and that all other claims be dismissed without leave to amend. (ER021.)

Specifically, the R&R concluded that *Abbasi* barred some of Chambers' *Bivens* claims. (ER028.) First, it found Chambers' retaliation claim against Herrera arose in a new context because the Supreme Court has never extended *Bivens* to First Amendment claims. (*Id.*) It also found special factors weighed against extending a *Bivens* remedy because "the BOP grievance and appeal process provided a meaningful remedy." (ER031.) Additionally, Chambers was pursuing a habeas action in Pennsylvania District Court[4] and pled a separate excessive force claim against Lt. Herrera in the present case, demonstrating further available remedies. (*Id.*)

The R&R also held that Chambers' Eighth Amendment failure to protect claims against Mitchell, Lake, and Martin were barred. (ER032.) As a threshold matter, it determined that Chambers had not pled facts demonstrating Defendants Lake and Mitchell knew Herrera posed a substantial risk of harm to him—

---

[4] That action has since been dismissed in its entirety. *See Chambers v. Fed. Bureau of Prisons*, No. 3:18-CV-501 (M.D. Pa).

knowledge required to state an Eighth Amendment deliberate indifference claim. (ER032-033.) However, the R&R recommended denying Chambers the opportunity to amend these claims, finding they were barred under *Abbasi*. (ER033.)

The R&R concluded Chambers' claims arose in a new context because the court had not found a decision extending *Bivens* to claims for failure to protect based on the actions of staff members, rather than prisoner-on-prisoner violence. (ER034.) Furthermore, the court hesitated to extend *Bivens* because liability for failure to protect claims arising out of staff misconduct risks "disruptive intrusion" into prison administration. (ER035.) Additionally, Chambers' claims targeted "high ranking BOP officials" and that those officials "can reasonably trust that other BOP staff members . . . will discover and address staff misconduct." (*Id.*) Finally, it found Chambers' claims sought to hold officials liable for inaction, rather than "specific actions taken against an individual inmate," which is commonly the basis of litigation based on prisoner violence. (*Id.*)

The R&R then concluded that special factors weighed against expanding *Bivens* to this new context for multiple reasons. (*Id.*) First, the challenged conduct of each Defendant "flowed from prison policies, not individual judgment." (*Id.*) Second, Chambers had other forms of relief, namely a *Bivens* claim against Lt. Herrera for use of excessive force. (*Id.*) Third, extending *Bivens* to this context

would "increas[e] administrative burdens without materially deterring violence or improving inmate safety" because "COs have incentives to avoid inmate-staff interactions that they know may produce violence" even without potential *Bivens* liability. (ER035-036.) Therefore, the R&R recommended dismissal of Chambers' First Amendment retaliation and Eighth Amendment failure to protect claims without leave to amend. (ER038.)

After discussing the *Bivens* claims, the R&R moved to Chambers' excessive force claims against Herrera and Velez, and his deliberate indifference to medical need claim against Esquetini. (ER036.) The R&R recommended dismissing these claims with leave to amend for failure to plead sufficient facts under FRCP 8. (*Id.*)

Chambers filed objections to the R&R. (ER011.) On August 29, 2019, the District Judge adopted the R&R in full. (ER009.)

### 6. The Present Appeal

At Chambers' request, the district court entered judgment dismissing the SAC entirely, including the claims previously dismissed with leave to amend. (ER004.) Chambers appealed. (ER224.) After the parties filed briefs, this Court appointed counsel. (Dkt. 24.)

## SUMMARY OF THE ARGUMENT

I.  The district court erred in dismissing Chambers' First Amendment retaliation claim under *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). In *Boule v.*

*Egbert*, 998 F.3d 370 (9th Cir. 2021), this Court expressly extended *Bivens* to First Amendment retaliation claims and should also do so here. Even beyond *Boule*, Chambers' *Bivens* claim is cognizable because no special factors counsel hesitation in extending *Bivens*, and he has no other available remedies.

II.     The district court erred in dismissing Chambers' Eighth Amendment claims against Mitchell, Lake, and Martin for their deliberately indifferent failure to protect him from serious harm posed by Herrera. These claims do not arise in new contexts because the Supreme Court recognized a *Bivens* remedy for deliberate indifference claims in *Carlson v. Green*, 446 U.S. 14 (1980), and *Farmer v. Brennan*, 511 U.S. 835 (1994). Even if Chambers' claims are a modest extension of *Bivens*, no special factors counsel hesitation and Chambers has no alternative remedies.

III.    The district court erred by dismissing Chambers' excessive force claim against Herrera because he alleged facts showing that he suffered a serious injury and that the circumstances of the incident raised a plausible inference that Herrera fractured his arm and wrist using force that was malicious and sadistic. The district court erred by dismissing Chambers' excessive force claim against Velez because a severe injury is not required to bring such a claim and because he alleged circumstances that raise a plausible inference

of malicious and sadistic force. Finally, the district court erred by dismissing Chambers' deliberate indifference claim against Esquetini because a significant delay in providing x-rays, or any sort of medical care, raises a plausible inference of deliberate indifference.

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim is reviewed *de novo*. *Dunn v. Castro*, 621 F.3d 1196, 1198 (9th Cir. 2010). The appellate court must accept "all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Capp v. County of San Diego*, 940 F.3d 1046, 1052 (9th Cir. 2019) (quotations omitted). Complaints filed by incarcerated *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). When reviewing complaints filed by incarcerated *pro se* plaintiffs, the court is further obligated, "particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner *the benefit of any doubt*." *Hebbe*, 627 F.3d at 342 (emphasis added) (internal citations omitted); *see also Zichko v. Idaho*, 247 F.3d 1015, 1020 (9th Cir. 2001) (obligation "particularly applies to complaints . . . filed by pro se prisoners").

The heightened pleading standards of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp v. Twombly*, 550 U.S. 544 (2007) have not altered these obligations. *Hebbe*, 627 F.3d at 341-42. In fact, this Court continues to apply the pleading standard that a *pro se* complaint should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

## ARGUMENT

## I.  THE DISTRICT COURT IMPROPERLY DISMISSED CHAMBERS' RETALIATION CLAIM BECAUSE NO SPECIAL FACTORS COUNSEL HESITATION IN EXTENDING *BIVENS* LIABILITY AND CHAMBERS STATED A PLAUSIBLE CLAIM FOR RELIEF

This Court should reverse the district court's conclusion that Chambers' First Amendment *Bivens* claim against Herrera is barred under *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). (ER028-031; ER009.) Within the past year, and after the district court's dismissal of Chambers' claim, this Court recognized the validity of a *Bivens* action for First Amendment retaliation. *Boule v. Egbert*, 998 F.3d 370 (9th Cir. 2021). This Court should follow its reasoning in *Boule* and find that no special factors counsel against extending *Bivens*. Indeed, the absence of any other remedies to redress Chambers' injuries demonstrates the necessity of a *Bivens* remedy. Because Chambers stated a plausible claim against Herrera for First Amendment retaliation, this Court should reinstate the claim. Alternatively, if this

Court extends *Bivens* but concludes Chambers failed to state a claim, it should remand to allow him to amend.

**A. The *Abbasi* test for determining whether a *Bivens* claim is actionable.**

In *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 396-97 (1971), the Supreme Court recognized an implied money damages remedy against federal employees who violate Constitutional rights. The Court has extended *Bivens* liability. *See, e.g.*, *Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980); *Farmer v. Brennan*, 511 U.S. 825 (1994).

*Ziglar v. Abbasi*, 137 S. Ct. at 1859-63, established a two-part test for determining whether a *Bivens* claim is actionable. First, courts should ask whether the claim arises in a new context—that is, whether it is "different in a meaningful way" from previous Supreme Court *Bivens* decisions. *Id.* at 1859. Second, courts should ask whether any special factors counsel hesitation in extending the remedy. *Id* at 1859-63. The Court did not define what factors to consider, but the analysis is focused on separation of powers concerns. *Id.* at 1857-58.

One relevant factor is whether the challenged conduct relates to the personal decisions of individual officers or concerns larger schemes of federal policy. *Id.* at 1860-63. Another factor asks whether recognizing a *Bivens* remedy would cause the judiciary to impermissibly wade into executive functions. *Id.* at 1858.

Additionally, the existence of alternative remedies usually precludes a *Bivens* action. *Id.* at 1858. However, "if equitable remedies prove insufficient, a damages remedy might be necessary to redress past harm and deter future violations." *Id.* at 1858. The Court encouraged consideration of whether "it is damages or nothing" for the plaintiff, highlighting that suits challenging "the individual official for his or her own acts" are by "their very nature . . . difficult to address except by way of damages actions after the fact." *Id.* at 1860, 1862.

## B. After *Abbasi*, this Court held that a *Bivens* remedy extends to retaliation claims under the First Amendment.

The Supreme Court has never expressly foreclosed the possibility of extending *Bivens* liability to First Amendment violations, despite having the opportunity recently to do so. *See Wood v. Moss*, 572 U.S. 744, 757 (2014); *Ashcroft v. Iqbal*, 556 U.S. at 675.

In *Hartman v. Moore*, the Court expressly stated that a First Amendment retaliation action may be sustained under *Bivens*. 574 U.S. 250, 256 (2006). There, the plaintiffs alleged retaliatory prosecution and the Court held no *Bivens* remedy was available because the prosecution was supported by probable cause. *Id.* at 265-66. In the absence of probable cause, a *Bivens* action *would have been available*. *Id.* at 256.

Against this backdrop, this Court recognized a *Bivens* action for First Amendment retaliation in *Boule*. 998 F.3d at 385. There, this Court applied

*Abbasi*'s two-part framework and concluded that although the claim arose in a new context, no special factors counseled against the remedy. *Id.* at 389-90.

### C. Chambers' claim in analogous to the one in *Boule*.

This Court should apply *Boule* to Chambers' First Amendment claim. While Chambers' claim may arise in a new context, no special factors compel hesitation in extending *Bivens*. *Boule*, 998 F.3d at 390 ("Although the Supreme Court wrote in *Hartman* that *Bivens* extends to First Amendment retaliation claims . . . we recognize that the Court has not expressly so held."). Analysis of Chambers' available remedies demonstrates the necessity of an actionable *Bivens* claim.

> **1. Chambers' claim challenges individual instances of unconstitutional conduct and recognizing a *Bivens* remedy would not cause the courts to impermissibly wade into prison administration.**

*Abbasi* looks to whether the claim addresses an individual officer's discrete instances of harm versus high-level executive policy. 137 S. Ct. at 1860-64. Another factor concerns whether recognizing a *Bivens* action would cause the courts to become overly involved with an administrative scheme. *Abbasi*, 137 S. Ct. at 1858.

Here, Chambers' claim is precisely the kind contemplated by *Bivens*—a damages claim based on individualized harm caused by a rank-and-file official. *See id.* at 1860; *Lanuza v. Love*, 899 F.3d 1019, 1029 (9th Cir. 2018). Acts of retaliation are inherently individual and unconnected to policy. Indeed, retaliation

claims challenge the failure of individual officers to *comply* with BOP policy. As this Court noted in *Boule*, retaliation is expressly forbidden by the Constitution. 998 F.3d at 390.

Furthermore, forbidding officer retaliation does not "inhibit [their] efforts to perform their official duties." *Carlson v. Green*, 446 U.S. 14, 19 (1980). Indeed, *not* retaliating is an official's *affirmative* duty. Thus, extending a money damages remedy would not diminish an official's decision-making ability or cause officials to second guess their actions in the lawful exercise of their duties, because retaliation is never connected to permissible official duties. *Cf. Abbasi*, 137 S. Ct. at 1863.

### 2. First Amendment claims are amenable to *Bivens* remedies because they are easily administrable and would not cause a flood of claims in the federal courts.

An additional consideration is the difficulty of implementing *Bivens* liability in the given context. *Lanuza*, 899 F.3d at 1033 (*Bivens* action allowed where "[t]he legal standards for adjudicating [it] are well established and administrable"). As this Court noted in *Boule*, First Amendment retaliation claims are straightforward and manageable for courts to adjudicate because the law is clearly established. 998 F.3d at 391. Indeed, this Court has extended a *Bivens* remedy in the First Amendment context before. *Gibson v. United States*, 781 F.2d 1334 (9th Cir. 1986).

Floodgates of litigation is a related concern. *See Davis*, 442 U.S. at 248.

Critically, in the prison context, prisoners must exhaust all administrative remedies

and meet the PLRA's screening requirement. 42 U.S.C. § 1997e(a); 28 U.S.C. §

1915A. *See, e.g.*, *Skinner v. Switzer*, 562 U.S. 521, 535-36 (2011) (PLRA meant to

limit prisoner lawsuits). Thus, the procedural hurdles of prisoner litigation alleviate

floodgate concerns.

Also, federal courts often address prisoner First Amendment retaliation

claims under 42 U.S.C. § 1983 and this has not caused any great flood of litigation

or unmanageably burdened courts. Moreover, if a given claim is "indeed

widespread, it demonstrates a dire need for deterrence, validating *Bivens'*

purpose." *Lanuza*, 899 F.3d at 1033.

### 3. Chambers has no alternative remedies outside of *Bivens*.

The district court named three remedies it believed provided alternative

relief for Chambers: the BOP grievance process, his habeas action, and his separate

claim against Herrera for excessive force. (ER032.) This was erroneous.

Chambers' retaliation claim is a "damages or nothing" action. *Abbasi*, 137 S. Ct. at

1862.

The BOP grievance process was never an adequate remedy because

Chambers was retaliated against *for utilizing that very process*. *Draper v. Rosario*,

836 F.3d 1072, 1078 (9th Cir. 2016) ("[R]emedies are not considered 'available' if

. . . officials threaten retaliation for filing a grievance."). Even PLRA exhaustion can be excused when "the threat of retaliation for reporting an incident can render the prison grievance process effectively unavailable." *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015). Here, after Chambers grieved Herrera, she retaliated by assaulting him, denying him law library and recreation time, and using her position to designate him to the SMU program. (ER218; ER172; ER173). Thus, suggesting that Chambers' remedy was to file more grievances is misguided and circular.

More fundamentally, *Abbasi* contemplates only *statutory* remedies that may evince a congressional intent to foreclose *Bivens*. *Abbasi*, 137 S. Ct. at 1865 (courts should ask "whether there were alternative remedies available or other sound reasons to think *Congress* might doubt the efficacy or necessity of a damages remedy") (emphasis added). The Congressional grant of authority for the BOP grievance process comes from a general grant of "control and management" power in the Attorney General over federal correctional institutions. *See* 18 U.S.C § 4001(b)(1). "The case law is not precise on how an *agency*'s remedial program should be considered" and the BOP grievance program "provides no reason to think that *Congress* might doubt the efficacy or necessity of a damages remedy." *Williams v. Baker*, 487 F.Supp.3d 918, 928 (E.D. Cal. Sept. 14, 2020) (emphasis original; internal quotations omitted).

The PLRA makes clear that a prisoner may bring a *Bivens* suit *after* exhausting administrative remedies. This demonstrates that Congress saw federal litigation working in tandem with the grievance process. *Id.* The exhaustion provision would be moot if it precluded *Bivens* liability. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002). Elsewhere the PLRA expressly contemplates what kind of injuries may form the basis of a "civil action" against a federal officer. *See* 42 U.S.C. § 1997e(e); *see also Williams*, 487 F.Supp.3d at 925. Congress did not doubt the viability of a damages remedy when it granted authority to the Executive Branch to create a prison grievance process.

The district court reasoned that, because Chambers had been transferred to a different prison and had successfully used the BOP appeals process to expunge some disciplinary findings against him, the appeal process already provided a meaningful remedy for his retaliation claim. (ER031.) Not so.

Transfer and expungements did nothing to remedy the harms Chambers already suffered—most notably, a fractured arm and SMU detention. (ER216; ER194; ER173.) His injuries arose from individual officer misconduct, notably "difficult to address except by way of damages actions." *Abbasi*, 137 S. Ct. at 1862. Thus, the grievance system is inadequate because it does not provide money damages. *See Administrative Remedy Program: Excluded Matters*, 67 Fed. Reg. 50804 (2002).

Turning to the adequacy of a habeas action, this remedy is moot because Chambers is no longer incarcerated.[5] Nonetheless, the harms Chambers suffered are not the kind meant to be remedied by a habeas action because success on the merits would not have impacted the fact or duration of his confinement. *See Nettles v. Grounds*, 830 F.3d 922, 934-35 (9th Cir. 2016) (en banc).

Moreover, the relief offered by a habeas action could not have redressed his injuries. Habeas actions provide only prospective relief. *See Abbasi*, 137 S. Ct. at 1879 (Breyer, J. dissenting) (noting that a writ of habeas corpus will not "provide plaintiffs with redress for harms they have *already* suffered"). Here, Chambers has already suffered injuries at Herrera's hand. (ER216; ER194, ¶ 1; ER173, ¶ 9.) Therefore, a habeas remedy stopping *future* retaliation from Herrera would provide no remedy. These concerns equally foreclose injunctive relief. *See Bivens*, 403 U.S. at 410 (Harlan, J., concurring) ("It will be a rare case indeed in which an individual in Bivens' position will be able to obviate the harm by securing injunctive relief from any court.").

The district court also contended that Chambers has alternative relief for his retaliation claim through his Eighth Amendment excessive force claim against Herrera for fracturing his arm. (ER031.) However, a separate *Bivens* claim arising

_____

[5] While incarcerated, Chambers filed a habeas petition relating to the Constitutional violations he experienced at USP Victorville. *See Chambers v. Fed. Bureau of Prisons*, No. 3:18-CV-501 (M.D. Pa). The court dismissed the action in its entirety. *Id.*

under a different Constitutional provision cannot be an adequate alternative remedy to compensate for an entirely different violation of Chambers' Constitutional rights. The fact that Herrera also used excessive force against Chambers does not eliminate the separate injuries caused by her retaliation, nor make relief for those injuries less appropriate.

Overall, Chambers has no remedies outside of *Bivens*. This fact, along with consideration of the other special factors contemplated in *Abbasi*, demonstrates that, even though Chambers' claim arises in a new context, no factors counsel hesitation in extending *Bivens* here. This outcome is commensurate with this Court's own precedent in *Boule* and serves the intended function of *Bivens* to hold individual officers liable for their unconstitutional acts. Therefore, this Court should conclude that Chambers First Amendment retaliation claim is cognizable under *Bivens*.

### D. Chambers' retaliation claim should be reinstated because he pled adequate facts to state a claim against Lt. Herrera.

Federal officials violate the First Amendment when they retaliate against a person for engaging in protected speech. *See Crawford-El v. Britton*, 523 U.S. 574, 592 (1998). Filing complaints through a prison grievance process is protected speech. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

As characterized by this Court, retaliation claims have five elements. *Id.* Chambers has pled facts that plausibly state a claim under this framework,

especially considering the liberal construction provided for *pro se* complaints, and the fact that at the motion to dismiss stage, all facts should be construed in the light most favorable to Chambers.

First, a plaintiff must allege that they engaged in protected conduct. *Id.* As previously noted, Chambers' conduct—filing a staff complaint—is protected. *Id.*

Second, a plaintiff must claim that the defendant took adverse actions against them. *Id.* The adverse action need not be itself an independent constitutional violation. *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Here, Chambers pled that after he filed a staff complaint against Herrera, she retaliated against him by assaulting him and fracturing his arm, denying him law library and recreation time, and utilizing her staff position to redesignate him to the SMU program. (ER218, ¶ 1; ER172, ¶ 1; ER173, ¶ 9.) Thus, this element is fulfilled.

Third, a plaintiff must plead "a causal connection between the adverse action and the protected conduct." *Watison*, 668 F.3d at 1114. "Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which the retaliation can be inferred is sufficient to survive dismissal." *Id.*; *Pratt*, 65 F.3d at 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent.").

Here, Chambers pled a causal connection between his grievance against Herrera and her retaliatory actions, as evinced through the chronology of events.

He pled that he filed the grievance on September 22, 2017. (ER171.) Soon thereafter, on October 13, 2017, Herrera assaulted Chambers, fracturing his arm and wrist. (ER218, ¶ 1; ER172, ¶ 1; ER173, ¶ 9.) Chambers alleged that Herrera made him vulnerable to redesignation to the SMU program, and the resulting designation hearing occurred the next month, on November 22, 2017. (ER173 ¶ 6). This chronology is circumstantial evidence that Herrera took these acts in retaliation for Chambers' for filing the grievance against her, and sufficiently meets the causation element at the motion to dismiss stage.

Fourth, the plaintiff must allege that the official's adverse action would "chill or silence a person of ordinary firmness from future First Amendment activities." *Watison*, 668 F.3d at 1114 (citing *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005)). However, a "plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm." *Id.* (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)). Here, Chambers alleged harm—his fractured arm and confinement in the SMU program—which satisfies the fourth element.

Finally, the plaintiff must plead that the adverse action did not advance any legitimate correctional goals. *Id.* ("A plaintiff successfully pleads this element by alleging, in addition to a retaliatory motive, that the defendant's actions were

arbitrary and capricious, or that they were unnecessary to the maintenance of order in the institution." (internal quotation marks omitted)).

Here, Chambers alleged that Herrera fractured his arm and wrist in a retaliatory assault. (ER168, ¶ 3.) He further pled that she was neither carrying out staff duties at the time, nor was he doing anything that merited a use of force. (ER057-058.) Therefore, the assault can serve no legitimate penological purpose.

Chambers further alleged that Herrera used her staff position to deny him access to recreation time and the law library, and to make him vulnerable to redesignation to the SMU program. (ER218, ¶ 1; ER172, ¶ 1; ER173, ¶ 9). An allegation that these actions were retaliatory is sufficient to withstand 12(b)(6) dismissal under this element when the plaintiff has not yet had the benefit of discovery. *See Watison*, 668 F.3d at 1114; *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *Strohmeyer v. Belanger*, No. 3:14-CV-00661-RCJ-WGC, 2018 WL 381141, at *6 (D. Nev. Mar. 27, 2018) ("There may have been legitimate penological interests justifying the alleged destruction of mail here, but the Court cannot determine that issue at the dismissal stage."); *Martin v. Hurtado*, No. 07cv0598 BTM RBB, 2008 WL 4145683, at *8 (S.D. Cal. Sept. 3, 2008) (citing *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)) ("Whether the defendants abused [protocol] as a ruse to punish Plaintiff for filing prior grievances . . . cannot be resolved on this Rule 12(b)(6) motion.").

Overall, because Chambers stated plausible claim for relief under the First Amendment, this Court should reinstate his retaliation claim against Herrera.

## II. DISMISSAL OF CHAMBERS' EIGHTH AMENDMENT CLAIMS WAS ERRONEOUS BECAUSE THE SUPREME COURT HAS EXTENDED *BIVENS* LIABILITY TO DELIBERATE INDIFFERENCE CLAIMS AND CHAMBERS STATED CLAIMS FOR RELIEF

The district court erred in dismissing Chambers' Eighth Amendment failure to protect claims against Mitchell, Lake, and Martin. (ER032-036.) First, Chambers' claims do not present a new context because the Supreme Court has expressly extended *Bivens* to deliberate indifference claims under the Eighth Amendment, including failure to protect claims. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Carlson v. Green*, 446 U.S. 14 (1980). However, even if this Court were to conclude that Chambers' claims present a new context, no special factors counsel hesitation in extending *Bivens*. And because Chambers is without alternative relief, *Bivens* liability is necessary redress his injuries. Thus, because Chambers stated a plausible claim for relief against Mitchell, Lake, and Martin, this Court should reverse the judgment of the district court dismissing the claims.

### A. The Supreme Court has expressly recognized *Bivens* liability for claims of deliberate indifference to known risks of serious harm.

In *Carlson*, the Court recognized a *Bivens* action under the Eighth Amendment for deliberate indifference to a prisoner's medical condition. 446 U.S. at 17. Later, in *Farmer*, the Court applied *Carlson* in recognizing an Eighth

Amendment *Bivens* action asserting that officials were deliberately indifferent to a serious risk that the prisoner would be assaulted. 511 U.S. at 847.

*Farmer* concerned a failure to protect claim—a circumstance that could have plausibly warranted an analysis of whether *Bivens* provided a remedy at all, since *Carlson* concerned a failure to treat claim. Nonetheless, the *Farmer* Court did not question whether *Bivens* was available. Instead, it proceeded to the merits, utilizing the case to clarify the requisite knowledge standard for deliberate indifference. *Id.* at 847; *see Wood v. Moss*, 572 U.S. 744, 757 (2014) (reasoning that the availability of a Bivens action is logically "antecedent" to deciding the merits of the case).

The entirety of the *Farmer* Court's discussion about whether a *Bivens* action was cognizable consisted of one sentence explaining the procedural history of the case. *Farmer*, 511 U.S. at 830 ("[P]etitioner then filed a *Bivens* complaint, alleging a violation of the Eighth Amendment."). Therefore, it appears that the Court accepted the validity of a *Bivens* action for failure to protect and did so without a second thought. Indeed, it would be irrational to assume the Supreme Court would entertain a lengthy merits analysis for a cause of action that did not exist, and *Farmer* has never been expressly overruled.[6]

_____

[6] The Supreme Court has counseled against lower courts deeming prior precedent implicitly overruled through silence. *See Agnostini v. Felton*, 521 U.S. 203, 237 (1997); *see also Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016) (reasoning that decisions remain binding precedent until the Court overrules them, even if subsequent cases raise doubt over a case's continued vitality).

Moreover, in later opinions, the Supreme Court characterized *Farmer* as a *Bivens* case. *See Minneci v. Pollard*, 565 U.S. 118, 129-30 (2012) (citing *Farmer* to demonstrate that Eighth Amendment actions under *Bivens* require a showing of deliberate indifference, not negligence); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001) (same); *see also id.* at 76 (Stevens, J., dissenting) (citing *Farmer* and stating "[w]e have never . . . qualified our holding that Eighth Amendment violations are actionable under *Bivens*").

Thus, *Farmer* was straightforwardly a *Bivens* case, and it is puzzling that the Court in *Abbasi* did not cite *Farmer* as such. One explanation for the omission is that the Court considered *Carlson* to have established a *Bivens* remedy for all Eighth Amendment deliberate indifference claims, and thus inclusion of *Farmer* in its list of cognizable *Bivens* actions would have been superfluous.

Indeed, this interpretation was expressly adopted by the Third Circuit. *See Bistrian v. Levi*, 912 F.3d 79, 90-91 (3d Cir. 2018) (opining that the most natural interpretation of *Abbasi* is that "the Court simply viewed the failure-to-protect claim" in *Farmer* "as not distinct from the Eighth Amendment deliberate indifference claim in the medical context" in *Carlson*). Moreover, in an unpublished post-*Abbasi* decision, this Court recognized a conditions of confinement claim as not presenting a new *Bivens* context, concluding that *Carlson* "recognized an Eighth Amendment *Bivens* claim based on *prisoner mistreatment*,"

providing further support that *Bivens* claims are not limited to the narrow facts of *Carlson*. *See Reid v. United States*, 825 Fed.Appx. 442, 444 (9th Cir. Sept. 2, 2020) (emphasis added).

Thus, *Farmer, Carlson*, and *Reid* make clear that *Bivens* liability extends to Eighth Amendment claims against federal officials who are deliberately indifferent to a serious risk harm to a prisoner. It is immaterial whether that risk arises from a medical condition, a threat of violence, or harmful conditions of confinement.

## B. Chambers' Eighth Amendment failure to protect claims fall within this established *Bivens* context.

Chambers' Eighth Amendment claims against Mitchell, Lake, and Martin arise in the context recognized in *Carlson*, *Farmer*, and *Reid*. He alleges that each individual Defendant was made aware of the serious risk Herrera posed and was deliberately indifference in failing to protect him. Nevertheless, the district court concluded Chambers' claims arose in a new context because his claims alleged the Defendants' failure to protect him from a *staff member*, rather than from another *prisoner*. (ER034.) This narrow factual distinction ignores the forest for the trees.

There is no meaningful difference between a claim that a prisoner faced a serious risk of harm from a fellow prisoner versus a staff member. The crux of the claims is the same: federal officials were deliberately indifferent to a serious risk of harm. Both scenarios require the court to apply the same legal standard and involve a defendant's same Constitutional responsibility.

Moreover, cases of bystander and supervisory liability demonstrate that Eighth Amendment claims can result from the failure of officials to prevent harm to prisoners perpetrated by other staff members. *See Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) ("[A] plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates."); *see also Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009) ("[S]upervisory officials may be liable on the basis of their own acts or omissions," including supervising "with deliberate indifference toward the possibility that deficient performance of the task may contribute to a civil rights deprivation.") (internal quotation marks and citations omitted).

Furthermore, failure to control and discipline specific officers who use excessive force has supported a finding of the supervisor's deliberate indifference. *See Valdes v. Crosby*, 450 F.3d 1231, 1237-44 (11th Cir. 2006) (holding that a warden could be liable in the beating death of a prisoner for failing to prevent a known pattern of excessive force); *Vann v. City of New York*, 72 F.3d 1040, 1051 (2d Cir. 1995) (finding that inadequate monitoring and supervision of "problem" officers could support liability); *Madrid v. Gomez*, 889 F. Supp. 1146, 1249 (N.D. Cal. 1995) (holding prison officials liable for "abdicating their duty to supervise

and monitor the use of force and deliberately permitting a pattern of excessive force to develop and persist").

Therefore, the long-standing practice of holding supervisors liable for their individual failure to step in when subordinates are using excessive force or to discipline problematic officers supports the imposition of *Bivens* liability here.

## C. Even if Chambers' claim is a modest extension of *Bivens*, special factors do not counsel hesitation in recognizing a damages remedy.

If this Court nonetheless concludes that Chambers' claims arise in a new context, it should still reverse the judgment of the district court because no special factors require hesitation in extending *Bivens*.

### 1. Eighth Amendment deliberate indifference claims are amenable to *Bivens* remedies because there is extensive judicial guidance on how courts should evaluate these claims.

*Abbasi* instructs consideration of the extent of judicial guidance in a given context. 137 S. Ct. at 1860. Here, there is extensive case law discussing Eighth Amendment claims—including failure to protect—and the deliberate indifference standard. *See, e.g., Farmer*, 511 U.S. at 834; *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). Indeed, this Court has expressly recognized a *Bivens* remedy for failure to protect claims. *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Thus, courts do not need to tread new ground to adjudicate these claims.

## 2. Separation of powers concerns are abated because Congress passed the PLRA with full knowledge of *Carlson* and *Farmer* and made no attempt to foreclose *Bivens* liability in this context.

The longstanding recognition of a *Bivens* remedy in this context with no express Congressional disapproval demonstrates that recognizing these claims presents no separation of powers concerns. Importantly, Congress passed the PLRA after *Carlson* and *Farmer*, as well as lower federal court opinions like *Gillespie*, and made no attempt to preempt them. *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) (stating that courts should presume "Congress is aware of existing law when it passes legislation"); *see also Midlantic Nat. Bank. v. New Jersey Dep't of Env'l Prot.*, 474 U.S. 494, 501 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific.").

Moreover, *Abbasi*'s central separation of powers concern is whether the judiciary is well suited to "weigh the costs and benefits of allowing a damages action to proceed." 137 S. Ct. at 1857-58. Here, we know the judiciary is well-suited to evaluate claims in the Eighth Amendment deliberate indifference context because it has already done so in *Carlson*, *Farmer*, and those cases' progeny, as well as extensively in the § 1983 context.

### 3. Chambers' claims challenge individual acts of the defendants, not far-reaching prison policies, and recognizing *Bivens* liability here would not entrench the courts in prison administration.

The district court below erroneously found that Chambers' claims "flowed from prison policies, not individual judgment." (ER035.) Recently, this Court held that a similar claim regarding Eighth Amendment deliberate indifference "would not result in inappropriate judicial intrusion into [BOP] policy" because the prisoner "allege[d] individualized injuries and fears of retaliation unique to him, not the inmate population as a whole." *Reid*, 825 Fed.Appx. at 445.

The same is true here. Chambers did not allege that Herrera posed a risk to all prisoners. Rather, he told Lake, Mitchell, and Martin individually that Herrera posed a serious risk of harm to *him*. His claims challenge the individual failures of specific officials to protect him from a known risk of serious harm. He is not challenging any overarching policy about how officials in Defendants' positions *ought* to respond to complaints from prisoners. Rather, he is stating claims against each Defendant for their individualized failure to protect him from Herrera after he notified each of them of the harm he faced.

The district court also concluded that extending *Bivens* liability to claims asserting risks from staff mistreatment would potentially cause "disruptive intrusion" into prison administration by requiring other officers to take actions that

they may not be authorized to take unilaterally, like moving prisoners or

reassigning staff members. (ER035.)

However, Chambers' theory of liability only requires him to prove that

Mitchell, Lake, and Martin were deliberately indifferent to the serious risk on harm

posed by Herrera. Defendants could defeat Chambers' claims if they were able to

demonstrate that they took *any* reasonable action to respond to the known risk of

harm, even if the harm was not avoided. *Farmer*, 511 U.S. at 844 (holding that

deliberate indifference is negated if officials "responded reasonably to the risk,

even if the harm ultimately was not averted"). Therefore, it is irrelevant whether

the officials had unilateral authority to move Chambers or reassign Herrera. They

were not necessarily required to do those things. They merely needed to do

*something*.

Addressing whether prison officials were deliberately indifferent will always

implicate BOP procedures related to prisoner safety to some extent, but as the

Third Circuit aptly noted, "that would be true of practically all claims arising in a

prison." *Bistrian*, 912 F.3d at 93. Moreover, the suggestion that interference with

prison administration is enough to deny a *Bivens* remedy is at odds with the reality

that two of the relatively few cases where the Supreme Court has recognized a

*Bivens* remedy involve claims arising out of prisons—*Carlson* and *Farmer*. In fact,

the *Carlson* Court made clear that prison officials "do not enjoy such independent

status in our constitutional scheme as to suggest that judicially created remedies against them might be inappropriate." *Carlson*, 446 U.S. at 19.

### 4. Extending *Bivens* would not unmanageably increase administrative costs.

The district court found that extending *Bivens* liability here would "negatively impact prison operations" because it would increase administrative burdens by requiring officials to act when a prisoner faces a risk of harm from a staff member. (ER035-036.)

Realistically, extending a *Bivens* remedy is almost certainly going to impose some administrative burdens. But the *Abbasi* Court ruled with this knowledge in mind and expressly chose to maintain *Bivens* despite having the opportunity to completely foreclose it. In fact, *Abbasi* found that *Bivens* should be extended where appropriate. 137 S. Ct. at 1856. And the fact that few cases assert instances of failure to protect from risks posed by staff members demonstrates that insignificant costs would be imposed by recognizing a *Bivens* remedy in this circumstance.

The district court also found that imposing liability would not materially deter violence or protect prisoners because prison officials already have incentives not to allow their fellow staff members to harass and harm prisoners. (ER035-036.) However, the long history of prisoner failure to protect claims litigated in federal courts—and the egregious facts of many of those cases—demonstrates that any

internal incentives officials have to prevent harm to prisoners are not significant enough to prevent instances of serious injury.

### 5. Chambers has no alternative remedies outside of *Bivens*.

The district court held that Chambers had relief through a *Bivens* claim against Herrera for use of excessive force. (ER035.) As previously analyzed, this conclusion is mistaken. A separate claim against a different Defendant does nothing to redress harms caused by other Defendants. Chambers should not be required to abandon his claims against Mitchell, Lake, and Martin for their specific, individual failures, merely because the risk they ignored actually caused him harm. If the district court's logic prevailed, no failure to protect claims would ever survive if the risk of harm was actualized into a concrete injury rising to the level of excessive force.

Additionally, and again, the BOP grievance process provides no relief because Chambers is no longer incarcerated at a BOP facility and grievances could never have redressed his injuries because the risk posed by Herrera arose from his use of the BOP grievance policy. *See Reid*, 825 Fed.Appx. at 445 ("The prison's internal administrative process is not available to [the plaintiff] because the allegedly unconstitutional treatment described in his complaint was inflicted in retaliation for his earlier attempt to report abuse by a prison guard through the prison's internal grievance process."). For reasons already analyzed, injunctive

relief cannot cure Chambers' injuries from past harms and prospective relief would be ineffective because he has been released.

Thus, Chambers has no redress apart from a *Bivens* remedy. Due to the longstanding principle that plaintiffs should not be left holding a right without a remedy, this Court should not hesitate in extending *Bivens*.

Overall, Chambers' claims do not arise in a new *Bivens* context. But even if this Court were to conclude that they did, special factors do not counsel hesitation in extending *Bivens* liability. Thus, this Court should reverse the judgment of the district court and conclude that *Bivens* liability is available in this circumstance.

### D. Chambers stated a plausible claim for relief against Defendants Mitchell, Lake, and Martin.

Eighth Amendment claims contain both a subjective state of mind requirement, and an objective element. In failure to protect cases, the objective prong considers whether the risk faced was sufficiently serious. *Farmer*, 511 U.S. at 834. The subjective element requires a plaintiff to show that defendants acted with "deliberate indifference." *Id.* Here, Chambers sufficiently demonstrated that the risk was a serious one by pleading that he actually suffered severe physical harm. Moreover, Chambers adequately pled that Defendants Mitchell, Lake, and Martin showed deliberate indifference to the known risk posed to Chambers by Herrera. Thus, this Court should conclude that Chambers stated a claim for relief for violation of his Eighth Amendment rights against Mitchell, Lake, and Martin.

## 1. He adequately pled that the risk of harm faced was sufficiently serious.

A plaintiff must demonstrate that the risk of harm was objectively sufficiently serious to violate the Eighth Amendment. In failure to protect cases, deliberate indifference to "excessive risk[s] to inmate health or safety" rises to this level. *Farmer*, 511 U.S. at 837; *see also Hudson v. Palmer*, 468 U.S. 517, 530 (1984) (stating that "calculated harassment unrelated to prison needs" can amount to an Eighth Amendment violation). Risk of harm falls on a spectrum of severity; while verbal harassment alone is insufficient, *see Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987), physical harassment or harassment "calculated to . . . cause [the prisoner] psychological damage" may be sufficient to state a claim. *See Keenan v. Hall*, 83 F.3d 1083, 1092 (9th Cir. 1996).

Although Chambers did not describe the exact content of the grievances, he alleged other facts throughout the docket that raise a plausible inference that the grievances contained enough information about Herrera to constitute a serious risk of harm. In his original complaint, Chambers alleged that an officer twisted his arm behind his back while in handcuffs at Herrera's behest on July 11, 2017, before he filed the grievances against Herrera. (ER216.) In his FAC, Chambers alleged that he warned Mitchell of Herrera's "mistreatment," (ER194), which denotes adverse action against Herrera more severe and concrete than "vague" threats or harassment. These and other allegations support an inference that the "harassment"

Chambers described in his grievances, as alleged in the SAC, was more than verbal. (ER172, ¶ 5.)

If this Court finds any deficiencies in Chambers' pleading on this issue, those deficiencies could easily be cured by amendment and access to counsel.

### 2. His pleadings demonstrate that Defendants were deliberately indifferent.

Deliberate indifference, the subjective prong of a failure to protect claim under the Eighth Amendment, requires the plaintiff to demonstrate that a defendant disregarded a known risk. *Farmer*, 511 U.S. at 839-43 (describing that "subjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause . . . and we adopt it as the test for 'deliberate indifference'"). A defendant need not know the precise nature or source of the risk so long as they know a serious risk exists. *Id.* at 843. "Whether a prison official had the requisite knowledge" is "a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* at 842.

Chambers pled facts sufficient to demonstrate each Defendants' knowledge of the serious risk of physical harm posed by Herrera. First, he alleges that Mitchell visited USP Victorville on September 20, 2017, where he "alerted her to [his] situation [and] gave her a[n] administrative remedy BP-10 [form, but] she did not intervene, which cause[d] [him] to get assaulted by Lt. Herrera and improperly

placed [him] at [the] SMU program." (ER218; ER172.) He further pled that Lake

visited USP Victorville on August 23, 2017, and Chambers "gave him a[n]

administrative remedy [form and] told him how [he] was being harass[ed] by Lt.

Herrera and Special Housing Unit staff. [Lake] did nothing . . ." (ER172.)

As for Martin, Chambers pled that he presented him with a grievance report

stating Chambers' fears of assault by Herrera. (ER173.) Martin "refuse[d] to

process [his] grievance report of [his] allegations of assault by Velez and other

staff which led to [Chambers] being assaulted by Lt. Herrera and sent to the

Special Management Unit." (*Id.*) Finally, he alleged that "[d]efendant[s] Martin,

[Lake], and Mitchell refused to process Chambers' complaints which resulted in

Chambers being assaulted, repeatedly harassed, and sent improperly to the SMU."

(ER100, ¶ 4.)[7] It is therefore clear that each of the three named Defendants knew of

the risk posed by Herrera.

Once an officer knows of a serious risk of harm, the Eighth Amendment

requires that they do something with that knowledge. *Cf. Farmer*, 511 U.S. at 844

(holding that deliberate indifference is negated if officials "responded reasonably

---

[7] It is true that several of these allegations do not explicitly name Herrera,
ostensibly motivating the district court's concern that Chambers "[did] not allege
the content" of the BP-10 forms. (ER033.) There are, however, other allegations
that do name Herrera. (ER172 (stating that Chambers told Lake how he was being
harassed by Herrera).) It can easily be inferred from Chambers' choice to bring the
same Eighth Amendment claim against all three Defendants, and from the repeated
claim that he gave them each some version of the same BP-10 form, that the
grievances themselves likely named Herrera in all instances.

to the risk, even if the harm ultimately was not averted"). Soon after Chambers attempted to file grievances with the Defendants, Herrera fractured his arm and wrist. This result raises a plausible inference that the Defendants did nothing to separate Herrera from Chambers or otherwise prevent her from fulfilling the threats and harassment of which Chambers had warned.

In *Wood v. Beauclair*, this Court granted summary judgment to the defendant prison officials on a failure to protect claim against a correctional officer. 692 F.3d 1041, 1051 (9th Cir. 2012). In that case, there was evidence that defendants had addressed the concern by advising the plaintiff's harasser on "proper boundaries" with inmates, and no evidence that defendants were aware of the risk posed by the harasser. *Id.* Chambers' situation is precisely the converse. He has alleged that the defendants were on notice and that they did not do anything in response to that notice. For that reason, the Court should find that Chambers pled facts raising a plausible inference that the defendants were deliberately indifferent.

It is indisputable that Chambers adequately pled facts supporting defendants' knowledge of a risk posed by Herrera. Therefore, dismissal of the claim has to turn on whether the risk was clearly or sufficiently serious or whether the Defendants did anything to protect Chambers from that risk. The first issue is easily cured by amendment and the second is nearly impossible for a *pro se* litigant to allege

before discovery. Therefore, although Chambers argues that he adequately stated claims against Defendants Mitchell, Lake, and Martin, if this Court finds otherwise, Chambers respectfully requests leave to amend his complaint on this issue.

## III. THE DISTRICT COURT IMPROPERLY DISMISSED CLAIMS AGAINST DEFENDANTS ESQUETINI, HERRERA, AND VELEZ BECAUSE CHAMBERS ADEQUATELY PLED A PLAUSIBLE CLAIM FOR RELIEF

The district court erred in dismissing Chambers' claims against Esquetini, Herrera, and Velez for three reasons. First, the court repeatedly faulted Chambers for failing to foreclose explanations for Defendants' behavior that would not have violated his constitutional rights, even though such foreclosure is not required at the dismissal stage. Second, the court ignored facts which cure the defects used to support dismissal. Third, case law supports a finding that Chambers pled sufficient facts to raise a plausible inference that Esquetini, Herrera, and Velez violated his Eighth Amendment rights. Therefore, this Court should reinstate those claims or, if the Court concludes that reinstatement of the claims would be improper, it should remand them so Chambers may amend.

### A. Chambers' allegation that Esquetini failed to treat him in any way for six weeks is sufficient to state a claim.

*Carlson v. Green*, 446 U.S. 14 (1980), extended the *Bivens* remedy to prisoner claims for failure to provide adequate medical treatment. Those officials

"violate the Eighth Amendment if they are 'deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Peralta v. Dillard*, 744 F.3d 1076, 1081 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The claim contains both an objective and subjective element. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).

### 1. Chambers' injury was an objectively serious medical need.

A medical need satisfies the objective element if "failure to treat it will result in significant injury or the unnecessary and wanton infliction of pain." *Peralta*, 744 F.3d at 1081 (internal quotations and citations omitted). Indications of a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic or substantial pain." *Colwell*, 763 F.3d at 1066.

Here, Chambers pled that he sought treatment from Esquetini because Herrera "severely fractured [his] right arm and wrist"). (ER172, ¶ 3; ER216). A painful fracture is an objectively serious medical need. *See Jett v. Penner*, 439 F.3d 1091, 1095-96 (9th Cir. 2006) (thumb); *Moore v. Thomas*, 653 F.Supp.2d 984, 1001 (N.D. Cal. 2009) (jaw). Thus, the "gravity of the alleged injury" fulfills the objective element of Chambers' Eighth Amendment claim. (ER209.)

### 2. Chambers sufficiently pled that Esquetini acted with deliberate indifference.

The subjective standard, deliberate indifference, is satisfied where a prison official "knows of and disregards an excessive risk to inmate heath." *Peralta*, 744 F.3d at 1082 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This includes when officials "deny, delay or intentionally interfere with medical treatment." *Hunt v. Dental Dept.*, 865 F.2d 198, 201 (9th Cir. 1989).

Chambers pled that Esquetini "refused to treat" him immediately after the assault and did not take x-rays of the fracture for six weeks. (ER172, ¶ 3; ER102 (asserting that Esquetini also "did not give Chambers a brace or medication").) He further alleged that Esquetini refused to treat him "to help Lt. Herrera cover-up her assault," and "undermined [his] medical record" and "claim[ed] it was just an incident." (ER172, ¶ 3.)

The district court faulted Chambers for failing to plead more specific facts about his treatment, including "what he told PA Esquetini about his injuries, what injuries to his arm (if any) were visible, what examination or treatment (if any) Plaintiff received before the x-rays . . . what treatment (if any) he received after the x-rays, and the ultimate condition of his arm." (ER037.) The court then concluded that, "[d]epending on such facts, PA Esquetini's alleged failure to order an x-ray more promptly could have been appropriate medical care or merely negligence, not deliberate indifference." (*Id.*)

The district court erred for two reasons. First, a *pro se* plaintiff is not obligated at the pleading stage to provide answers to the kinds of questions posed by the court. *See, e.g., Quinn v. Dowbak*, No. 2:17-cv-0992-MCE-EFB-P, 2019 WL 1923222, at *2-3 (E.D. Cal. Apr. 30, 2019) (doctor incorrectly placed pins in the plaintiff's fractured finger and refused to take post-surgery x-rays; at pleading stage, court was obligated to construe the allegations liberally and allow for deliberate indifference).

Second, the case on which the district court relied, *Kaddoura v. Cate*, No. 1:11-cv-01422-LJO-LJO-BAM PC, 2012 WL 5308012 (E.D. Cal. Oct. 29, 2012), is distinguishable. There, the court found that, "while [the defendant] did not order an x-ray, the complaint fails to show that he was aware of facts from which he could make an inference that Plaintiff's leg was fractured and x-rays were needed or that he had made such an inference." *Id.* at *7. Here, however, Chambers alleged that Esquetini deliberately did not treat his arm in an effort to help Herrera cover up her assault, which requires the inference that Esquetini knew there was an injury to treat. Therefore, Chambers supplies the facts missing from the complaint in *Kaddoura*.

Overall, Chambers' complaint contains sufficient facts "from which it reasonably could be concluded that [medical providers] were aware of the seriousness" of Chambers' condition "but denied his requests for prompt

treatment." *Hunt*, 865 F.2d at 201. Esquetini was at least deliberately indifferent in intentionally withholding services as part of a malicious course of conduct to cover-up Herrera's assault. This Court should reinstate Chambers' claim against Esquetini or remand with instructions to allow Chambers to file an amended complaint.

**B. The District Court improperly dismissed Chambers' Eighth Amendment claims for excessive force against Herrera and Velez.**

Excessive force against prisoners violates the Eighth Amendment. *Clement v. Gomez*, 298 F.3d 898, 903 (9th Cir. 2002). This claim includes an objective and subjective element. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

District courts in this Circuit have recognized a *Bivens* remedy for Eighth Amendment excessive force. *See, e.g.*, *Williams v. Baker*, 487 F.Supp.3d 918, 930 (E.D. Cal. 2020); *Moneyham v. United States*, No. EDCV 17-329-VBF (KK), 2018 WL 3814586, at *5 (C.D. Cal. May 31, 2018); *McLean v. Gutierrez*, No. EDCV 15-275 RGK (SP), 2017 WL 6887309, at *17-19 (C.D. Cal. Sept. 28, 2017).

**1. The District Court improperly required Chambers to foreclose alternative factual scenarios in his claim against Herrera.**

Objectively, the force must be more than *de minimis* but "the bar is not high." *Johnson v. Heins*, 844 Fed.Appx. 974, 977 (9th Cir. 2021). Herrera's force caused a "severely fractured . . . right arm and wrist." (ER 216.) These injuries

could not have been "*de minimis* under the established standard." *Johnson*, 844 Fed. Appx. at 977.

Subjectively, the "core judicial inquiry" is "whether the defendant officers acted in bad faith with the intent to harm the inmate." *Hoard v. Hartman*, 904 F.3d 780, 790 (9th Cir. 2018). A jury's finding of excessive force may rest on inferences drawn from circumstantial evidence. *Santos v. Gates*, 287 F.3d 846, 852 (9th Cir. 2002); *see also McCottrell v. White*, 933 F.3d 651, 655-60 (7th Cir. 2019). Malicious and sadistic intent may be inferred "from the conduct itself," *Serna v. Colorado Dept. of Corr.*, 455 F.3d 1146, 1152 (10th Cir. 2006), or from "the extent of a Plaintiff's injury." *Chavez v. Kings Cty.*, No. 113-cv-00342-SKO-PC, 2016 WL 8730713, at *6 (E.D. Cal. Mar 18, 2016) (citing *McMillian*, 503 U.S. at 7).

Here, several pieces of circumstantial evidence support a plausible inference of malintent. First, the injury is severe—two separate fractures of Chambers' arm and wrist, which could denote either the gravity of the force or the intentionality of an act that results in multiple injuries. (ER168.) Second, the assault was part of Herrera's longer course of antagonistic conduct. (*Id.* at ¶ 1.) It can plausibly be inferred that Herrera intended to hurt Chambers out of either spite or retaliation.

Despite Chambers pleading sufficient facts demonstrating both required elements, the district court nonetheless required him to dispel alternative explanations for his injuries. (ER036-037.) Specifically, it reasoned that Chambers

"[left] open the possibility . . . that he fell while fleeing some verbal or non-physical 'assault' by Lt. Herrera." (*Id.*)

This assessment of the pleadings is incorrect. Chambers expressly asserted that Herrera "physically assaulted him," foreclosing other possibilities. (ER 216.) Even putting that aside, the district court held Chambers to an impermissibly high pleading standard. He was not required to list alternative factual scenarios in his complaint and explain that they *did not* occur. *See Steinle v. City & Cty. of San Francisco*, 230 F.Supp.3d 994, 1035 (N.D. Cal. 2017); *Watson Carpet & Floor Covering, Inc. & Mohawk Industries, Inc.*, 648 F.3d 452, 454 (6th Cir. 2011) ("exclusive explanation" for defendant's actions not required). Thus, even if the court found that it was *possible* Chambers was injured in flight from Herrera, it is certainly not "beyond doubt" that Chambers can "prove no set of facts in support of his claim" that he was physically assaulted by Herrera. *See Nordstrom*, 762 F.3d at 908.

The Court should reverse the lower court's judgment and reinstate his claim to proceed on the merits. Alternatively, if the Court finds the claim insufficiently pled, Chambers respectfully requests that the claim be remanded to the lower court with leave to amend.

 **2. Chambers' allegation that Velez sprayed him with mace through the food slot of a solitary confinement cell gives rise to a plausible inference that Velez acted with malicious and sadistic intent.**

Under the Eighth Amendment's objective standard for excessive use of force, "no lasting physical injury is necessary to state a cause of action." *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000); *see also McMillian*, 503 U.S. at 7. Therefore, the district court's conclusion that Chambers "failed to allege what injuries, if any, he sustained" was erroneous. (ER037.)

In determining whether a defendant's use of force was sufficient to satisfy the subjective standard, the court may consider "the extent of injury suffered by an inmate . . . the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *McMillian*, 503 U.S. at 7 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Although small amounts of pepper spray may be used lawfully, "it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." *Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013) (citations and quotations omitted).

In *Furnace*, this Court applied the *McMillian* factors where the officer sprayed the plaintiff with mace through the food slot of his cell door. *Id.* at 1028-30. Relevant to this case, the Court found that "Furnace's most menacing act was to question [the defendant]'s decision . . . and to try to communicate with [another

officer] through the food port." *Id.* at 1029. While the plaintiff did rest his fingers in the food port, relevant to the officers' training that prisoners who "take control of food ports pose a serious immediate safety to concern," he "was locked in his cell behind a large metal door, and had not . . . made any aggressive or threatening remarks." *Id.* (internal quotations omitted). The Court rejected the defendant's claim of qualified immunity, concluding that "a significant amount of force was employed without significant provocation from Furnace." *Id.* at 2030.

Here, Chambers alleges that Velez "assaulted [him] with a can of mace," by "spraying [him] through the food slot in [his] face and mouth." (ER216.) The incident occurred on May 1, 2017, while Chambers was in the SHU. (*Id.*) As in *Furnace*, Chambers was behind a heavy, locked metal door. Compared to Furnace's fingers in the slot, it is even less probable that Chambers either gained control over the slot or posed a threat to officers using only his face. This supports an inference that Velez used the pepper spray out of malice rather than need. Furthermore, Chambers alleged that Velez "fabricated a false incident report to try and cover up his illegal act," such that it can be easily inferred that Velez either knew he had done something wrong or held a special malice towards Chambers. (ER168, ¶ 2.)

Overall, under the liberal pleading standards for pro se claims, Chambers met his burden to allege sufficient facts to give defendants fair notice of his claims

and supporting facts. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Therefore, this Court should reverse the lower court's judgment and reinstate Chambers' excessive force claims against Defendants Herrera and Velez to proceed on the merits. Alternatively, if the Court finds the claim insufficiently pled, Chambers respectfully requests that the claim be remanded to the lower court so Chambers may file an amended complaint with the benefit of counsel.

## CONCLUSION

For these reasons, this Court should reverse the judgment of the district court and reinstate Chambers' (1) First Amendment claim against Herrera, (2) Eighth Amendment claims against Mitchell, Lake, and Martin, (3) and Eighth Amendment claims against Herrera, Velez, and Esquetini. If the Court concludes that Chambers' *Bivens* claims are cognizable, but that he failed to state a claim, or that Chambers' claims against Herrera, Velez, or Esquetini are insufficiently pled, the Court should rescind the district court's entry of final judgment and remand with instructions to allow Chambers to file a Third Amended Complaint. The Court should also instruct the district court to appoint counsel for Chambers.


Date: October 15, 2021                          Respectfully submitted,


                                                */s/ Carter C. White*
                                                Carter C. White
                                                Supervising Attorney

Emily Dennis
Abigail Miles
Certified Law Students

*Counsel for Plaintiff-Appellant*
*Roscoe Chambers*

**STATEMENT OF RELATED CASES**

Pursuant to Ninth Circuit Rule 28-2.6, there are no known related cases to this appeal pending in the United States Court of Appeals for the Ninth Circuit.

Date: October 15, 2021

*/s/ **Carter C. White***
Carter C. White

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Ninth Circuit Rule 32-1(a) because this brief contains 12,994 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), as incorporated by Ninth Circuit Rule 32-1(c).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

Date: October 15, 2021

*/s/ Carter C. White*
Carter C. White

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2021, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.


Date: October 15, 2021

*/s/ Carter C. White*
Carter C. White

# ADDENDUM

**18 U.S.C. § 4001(b)(1)**

**(a)** No citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress.

**(b)(1)** The control and management of Federal penal and correctional institutions, except military or naval institutions, shall be vested in the Attorney General, who shall promulgate rules for the government thereof, and appoint all necessary officers and employees in accordance with the civil-service laws, the Classification Act, as amended, and the applicable regulations.

**(2)** The Attorney General may establish and conduct industries, farms, and other activities and classify the inmates; and provide for their proper government, discipline, treatment, care, rehabilitation, and reformation.

**28 U.S.C. § 1915A**

**(a) Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

**(b) Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--

**(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

**(2)** seeks monetary relief from a defendant who is immune from such relief.

**(c) Definition.**—As used in this section, the term "prisoner" means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program.

**42 U.S.C. § 1983**

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial

capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

## 42 U.S.C. § 1997e(a)

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

## 42 U.S.C. § 1997e(e)

No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).